**\*E-FILED 12/15/04\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEVE FUNDERBURG, ET AL., | NO. C 02-05461 JW (RS) |
| Plaintiffs, | **ORDER DENYING MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM NON-PARTY CHURCH OF SCIENTOLOGY** |
| v. | |
| UNITED STATES OF AMERICA, ET AL., | |
| Defendants. | |
| _____/ | |

## I. INTRODUCTION

Defendant United States of America filed a motion to compel a non-party, the Church of Scientology ("Church"), to produce various documents and other responsive materials pursuant to a subpoena which was served on the Church on July 12, 2004. Specifically, the subpoena requests production of documents and materials reflecting all payments made by plaintiffs to the Church, as well as all documents regarding any mental health counseling sessions provided by the Church to the minor plaintiff, to plaintiff Steve Funderburg, and to decedent Susan Booth. Since the filing of the motion, the Church has

agreed to produce all documents responsive to the three requests which pertain to financial information.[1] Therefore, only the requests for documents regarding "mental health counseling" are currently disputed.[2] The motion to compel production of those records was fully briefed and heard by the Court on December 8, 2004. In addition, the United States filed a supplemental brief on December 13, 2004. Based on all papers filed to date, including the supplemental brief filed by the United States, as well as on the oral argument of counsel for the parties and counsel for the Church, the Court denies the motion to compel for the reasons set forth below.

## II. BACKGROUND

This action was filed as a result of an aircraft accident that occurred on August 5, 2001 near Weaverville, California. Plaintiff Dr. Mark Sajjadi was the pilot of the aircraft and his daughter, Dr. Susan Booth, as well as her minor son, plaintiff Mark D. Booth, and husband Steven Funderburg, were passengers on the airplane. During takeoff, Dr. Sajjadi allegedly traveled in the wrong direction and crashed the plane into trees at the north end of the runway. Dr. Booth was killed in the crash. Dr. Sajjadi, as well as his grandson and son-in-law, (collectively, "plaintiffs") suffered injuries and sued the United States for negligence and wrongful death pursuant to the Federal Tort Claims Act. Plaintiffs contend that the accident occurred as a result of erroneous information provided to Dr. Sajjadi by an FAA Flight Services Station briefer and due to inadequate warning signs and markings at the Weaverville Airport.

The County of Trinity (hereinafter "County") filed claims against the United States and Dr. Sajjadi seeking contribution and indemnity. The United States, in turn, filed a counterclaim against Dr. Sajjadi for contribution, indemnity and declaratory relief. Plaintiffs allege three claims for relief in their complaint, including a claim for negligent infliction of emotional distress. The Court's jurisdiction is based on the Federal Tort Claims Act, 28 U.S.C. § 2671.

As a result of plaintiffs' claim for emotional distress and their statements made during depositions

---

[1] At the hearing, counsel for the Church stated that, in fact, all responsive financial records had since been provided.

[2] With respect to such requests, the government withdrew its motion regarding records concerning the decedent. It now, therefore, seeks the Church's audit files for the minor and Steve Funderburg.

2

that they received "counseling" from the Church following the plane crash, the United States sought production of all "mental health records" from the Church regarding minor Booth and Steve Funderburg.[3] The Church responded that it did not have responsive documents since it does not provide "mental health counseling or psychotherapy" to its members.

During subsequent meet and confer sessions, the United States informed the Church that plaintiffs minor Booth and Funderburg had testified during depositions that they had received "counseling" or "auditing" from the Church following the plane crash. The Church, while disputing that the subpoena includes a sufficiently specific request for "auditing records," asserts that all documents relating to its audits are privileged communications, protected under the clergy-penitent privilege. The Church states that "auditing" is the confessional process of the Scientology religion and that the communications which occur between an auditor and the parishioner, who is referred to as a "preclear," are confidential and are placed under lock and key in files marked "clergy-penitent privileged communication." See Church's Opposition Brief at p. 3.

The United States responds that the existence of privileges in federal cases is governed by Rule 501 of the Federal Rules of Evidence which, as applied here, does not compel the Court to recognize the existence of the privilege. Morever, the United States notes that, even if such a privilege exists, it has been waived because neither the Church nor plaintiffs timely objected to the subpoena, pursuant to the requirements set forth in Fed.R.Civ.Pro. 45(c)(2)(B). Finally, even assuming that the privilege exists and that a timely objection had been made to the subpoena, the United States argues that each of the plaintiffs waived the privilege by placing his mental state at issue in this litigation. The parties' arguments are addressed below.

### III. LEGAL STANDARDS

Under Fed. R. Civ. Pro. 26(b)(1), parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. "For good cause, the court may order

---

[3] The subpoena requests production of all documents "that evidence any mental health counseling (including but not limited to psychotherapy) provided to [plaintiffs] by, on behalf of or by arrangement or referral through the Church of Scientology from January 1, 1999 to the present."

3

1  discovery of any matter relevant to the subject matter involved in the action. Relevant information need not
2  be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of
3  admissible evidence." Fed. R. Civ. Pro. 26(b)(1). Evidence is relevant if it has "any tendency to make the
4  existence of any fact that is of consequence to the determination of the action more probable or less
5  probable than it would be without the evidence." Fed. R. Evid. 401. Discovery may be limited by the court
6  for good cause shown "to protect a party or person from annoyance, embarrassment, oppression, or undue
7  burden or expense." Fed. R. Civ. Pro. 26(c).

## IV.  DISCUSSION

A.   Existence of Privilege Governed by Federal Law

The United States argues that, pursuant to Federal Rule of Evidence 501, privileges asserted in federal question cases, such as this action, are governed by federal law. Fed.R.Evid. 501. It states that, although state privilege law applies to state law claims brought in federal court pursuant to diversity jurisdiction, state law claims that are pendent to federal question cases are governed by federal privilege law. See e.g., Burrows v. Redbud Community Hospital District, 187 F.R.D. 606, 610-611 (N.D. Cal. 1998); Pagano v. Oroville Hospital, 145 F.R.D. 683 (E.D. Cal. 1993). Since the Court's jurisdiction in this case is invoked pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, the United States contends that federal privilege law, which should apply here, does not recognize the clergy-penitent privilege.

Plaintiffs contend, on the other hand, that Federal Rule 501 permits the application of state privilege law to any "claim or defense" which is governed by state law. Fed. R. Evid. 501. Since their claim for negligent infliction of emotional distress is based on state law, they argue that the state privilege should govern the production of documents related to such claims. In fact, courts have noted that, "where the application of state privilege law to evidence in support of a claim arising under state law creates no conflict, such as where the evidence sought can be relevant only to state law claims, the state law privilege should be applied consistent with the express language of Rule 501." Platypus Wear, Inc. v. K.D. Co., Inc., 905 F.Supp. 808, 812 (S.D. Cal. 1995); Leon v. County of San Diego, 202 F.R.D. 631, 635 (S.D. Ca. 2001) (noting that federal courts should attempt to accommodate state privilege in federal question cases unless

4

doing so would impair assertion of federal right). The United States points to no conflict which would arise here through the application of state law with respect to plaintiffs' claim of the clergy-penitent privilege in response to the subpoena issued to the Church.

The clergy-penitent privilege "as it has existed in the United States has been broadly recognized and affirmed in dicta by the Supreme Court. So Justice Field remarked for a unanimous court that 'suits cannot be maintained which would require a disclosure of the confidences of the confessional, or those between husband and wife.'" Mockaitis v. Harcleroad, 104 F.3d 1522, 1532 (9th Cir. 1997), quoting Totten v. United States, 92 U.S. 105, 107 (1875). Over a century later, Chief Justice Burger observed that the clergy-penitent privilege was "rooted in the imperative need for confidence and trust." Trammel v. United States, 445 U.S. 40, 51 (1980). The privilege embraces "any confession by a penitent to a minister in his capacity as such to obtain such spiritual aid" and was applied, for example, to reverse a criminal conviction where a Lutheran communicant had confessed her crime to a minister as a condition for receiving communion and his testimony had been used to convict her. Mullen v. United States, 263 F.2d 275, 277 (D.C. Cir. 1958).

Nonetheless, "not every communication to a member of the clergy is privileged in the eyes of the law." People v. Edwards, 203 Cal.App.3d 1358, 1362 (1988). Rather, in order for a statement to be privileged: (1) it must be intended to be in confidence; (2) it must be made to a member of the clergy who in the course of his or her religious discipline or practice is authorized to hear such communications; and, (3) such member of the clergy must have a duty under the discipline or tenets of the church, religious denomination, or organization, to keep such communications secret. Cal. Evid. Code § 1032; Id. The United States argues that no competent declaration has been submitted to the Court establishing that these requirements have been met and notes correctly that the Church bears the burden of establishing the existence of the privilege in this case. See e.g., In re Grand Jury Investigation, 974 F.2d 1068, 1070 (9th Cir. 1992) (party asserting the privilege has the burden to establish the privilege).

A review of the declaration submitted on behalf of the Church reveals, however, that: (1) audits are deemed strictly confidential by the Church; (2) audits are conducted by trained auditors and occur only between such auditor and the preclear; and, (3) the records from such audits are maintained in separate

5

1 files which are marked "confidential" and stored in lock cabinets. See Declaration of Leslie Holmes at p. 3,

2 ¶ 13. Moreover, the deposition excerpts submitted by the United States show that both plaintiffs minor

3 Booth and Funderburg preserved the confidentiality of the audits and declined to disclose the

4 communications which had occurred during such sessions. Id. at Exhs. D, E. Accordingly, the Church has

5 established that the statements made by the plaintiffs during their audits are privileged and, therefore,

6 entitled to protection under the clergy-penitent privilege.

7 B.      Privilege Waiver

8      The United States argues that, even assuming the Court finds that the clergy-penitent privilege

9 applies in this instance, plaintiffs and the Church have waived any objection based on such privilege by

10 failing to make a timely objection to the subpoena. Fed.R. Civ. Pro. 45(c)(2)(B) (requiring that objections

11 to subpoena must be in writing and served within 14 days of service of the subpoena). Here, the subpoena

12 was served on July 12, 2004 and called for the production of documents on July 28, 2004. See Dempsey

13 Declaration at Exh. A. Neither the Church nor plaintiffs served written objections on the United States by

14 July 28, 2004. Id. at ¶ 3. As a result, the United States contends that the Church and the plaintiffs have

15 waived any objections to the subpoena. U.S. *ex rel.* Schwartz v. TRW, Inc., 211 F.R.D. 388, 392 (C.D.

16 Cal. 2002) (finding that "[f]ailure to serve timely objections waives all grounds for objection, including

17 privilege.").

18      At the hearing, however, the Church noted that it had obtained an extension of time, until the end of

19 August, within which to produce documents and/or to file objections to the requests. It further stated that it

20 had done both, by producing some responsive documents and by objecting to some requests for others.

21 The United States does not deny that an extension of time had been granted, but notes that, even as of

22 August 30, 2004, no clergy-penitent objection had been lodged. The Church contends, however, that such

23 objection was not raised at that time because it was then unaware that the United States was requesting

24 production of the audit files and notes that the subpoena does not specifically request "audit" records.

25 Once the Church was apprised that the United States sought the audit files, it immediately asserted the

26 clergy-penitent privilege. The United States responds that the Church's position regarding the description

27 of the requested documents is "not well founded given the Plaintiffs' description of auditing during their

28

6

respective depositions." See Defendant's Reply Brief at p. 2, fn. 2.[4] While plaintiffs during their depositions did refer to "audits" as "counseling," see Dempsey Declaration at Exhs. D, E, the Church correctly notes that "documents" are not defined in the subpoena to include "audit records." Id. at Exh. A. Moreover, the deposition testimony relied upon by the United States also clearly establishes that plaintiffs considered the audits confidential and, accordingly, did not disclose their contents. Id. at Exhs. D, E.

Based on the language and definitions provided in the subpoena, the Court concludes that the United States did not make a sufficiently clear request for copies of "auditing records." Once it became apparent that it sought those records as a result of subsequent discussions between counsel, the Church properly interposed its objection to the production of such records based on the clergy-penitent privilege. Therefore, the Court finds that the Church has not waived its objection to the production of the auditing records based on that privilege.[5]

The United States also argues that each of the plaintiffs has placed his mental state at issue in this action by filing claims for emotional distress. While this argument is correct, it addresses the relevancy of the documents rather than the application of the clergy-penitent privilege to the requested records. Neither the Church nor plaintiffs contend that the records requested are irrelevant to any claim or defense in this case. Rather, both the Church and the plaintiffs argue that the audit files are privileged and protected by the clergy-penitent privilege and, therefore, need not be produced in this instance. Moreover, plaintiffs' counsel also noted at the hearing that the United States has received all relevant records regarding the mental health of each plaintiff, since both plaintiffs underwent psychiatric examinations, at the request of the United States, and all resulting reports were provided to it. Accordingly, the fact that the Church's audit files may contain factual statements made by each of those plaintiffs regarding his mental well-being shortly after the accident does not operate in any way to waive the application of the clergy-penitent privilege. Cal. Evid. Code § 912(a) (waiver occurs where claimant freely discloses, or consents to the disclosure of, "a significant part of

---

[4] The Court also notes that the case relied upon by the Church to support application of the privilege in this case, Hernandez v. Commissioner of Internal Revenue, 490 U.S. 680 (1989), states that auditing is also known as "counseling." Id. at 684, fn. 2.

[5] While a member of the clergy may claim the privilege even if the penitent has waived it, see Cal. Evid. Code § 1034, Comment, here counsel for plaintiffs has invoked the privilege of behalf of his clients.

United States District Court
For the Northern District of California

the communication."); People v. Edwards, 203 Cal.App.3d at 1363 (same).  The United States has failed, therefore, to establish that either the plaintiffs or the Church waived their rights to assert the clergy-penitent privilege in this instance.

## V.  CONCLUSION

For the reasons set forth herein, the Court denies the motion by the United States to compel the Church to produce its audit files concerning plaintiffs minor Booth and Steve Funderburg.

Dated:  12/15/04

/s/ Richard Seeborg
RICHARD SEEBORG
United States Magistrate Judge

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN DELIVERED TO:**

Claire T. Cormier claire.cormier@usdoj.gov

Ashley E. Dempsey ashley.dempsey@usdoj.gov

Debra Fowler debra.fowler@usdoj.gov,

Leslie Holmes lholmes@hoganlaw.com,

Donald S. Honigman dhonigman@kennmark.com, aroque@kennmark.com

Raymond H Hua rhua@baileypartners.com,

Jonathan S. Morse jmorse@baileypartners.com, kstockdale@baileypartners.com

Robert Ray Neller rneller@kennmark.com, sebell@kennmark.com

Stephen Lester Nelson snelson@baileypartners.com,

David S. Rand randlaw@pacbell.net

S. Keven Steinberg ksteinberg@baileypartners.com,

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.